UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORDY RICE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>D. BAUER, et al.,<br><br>　　　　　Defendants. | No. 2:15-cv-236-JAM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He alleges that defendants D. Bauer, M. Thompson, J. Rodriguez, and A. Lanigan violated his Eighth Amendment rights by using excessive force against him. ECF No. 1. Defendants have filed a motion for summary judgment, ECF No. 68, which plaintiff opposes, ECF No. 73. After defendants filed a reply, ECF No. 77, plaintiff submitted a motion to amend his opposition brief, ECF No. 78, which the court granted. ECF No. 79. That order also afforded defendants an opportunity to amend their reply and they have done so. ECF No. 80. After review of the pleadings and the record, the court finds that defendants' motion should be granted in part.

**I.　　Background**

Plaintiff alleges that, on November 29, 2013 and while incarcerated at California State Prison – Sacramento ("CSP-SAC"), he broke the window on his cell door. ECF No. 1 at 4. He claims defendants then ordered him to submit to handcuffs two or three times. *Id.* Plaintiff eventually complied and defendants Bauer and Rodriguez 'yanked' him out of his cell. *Id.* He

1

alleges that Bauer then slammed him to the floor and began to beat his head against the concrete. *Id.* As a result of Bauer's actions, plaintiff claims that glass from the broken window was lodged in his forehead and left knee. *Id.* He claims that Rodriguez and Thompson assisted Bauer in this use of excessive force and that Lanigan, who held the rank of sergeant at the time of the incident, failed to intervene. *Id.* at 3.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in

question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

**B.     Excessive Force**

In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must demonstrate that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any

efforts made to temper the severity of a forceful response. *Id.* at 7; *see also id.* at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks and citations omitted). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

### III. Analysis

Defendants raise five arguments in their motion. First, they contend that defendant Thompson is entitled to summary judgment because records demonstrate that he was not present on the day of the alleged use of force. ECF No. 68-2 at 6-7. Second, they argue that defendants Bauer and Rodriguez used only the reasonable force necessary to safely remove plaintiff from his cell and did not have malicious intent. *Id.* at 7-9. Third, they argue that plaintiff failed to exhaust his administrative remedies against defendant Lanigan prior to filing this suit. *Id.* at 9-10. Fourth, they contend that Lanigan did not witness any use of unnecessary force and, consequently, had no realistic opportunity to intervene to stop such force. *Id.* at 10-11. Fifth, defendants contend that Lanigan, Bauer, and Rodriguez are entitled to qualified immunity. *Id.* at 11-14. After review of the pleadings and, for the reasons discussed below, the court finds that: (1) defendant Thompson is entitled to summary judgment because records conclusively establish that he was not present at CSP-SAC on the day of the incident; and (2) defendant Lanigan should be dismissed because plaintiff failed to exhaust administrative remedies against him before filing this suit. Defendants' other arguments, for the reasons stated below, are rejected.

#### A. Defendant Thompson

Defendants present the sworn declaration of defendant Thompson and a copy of his relevant timesheet to establish that he was not present at CSP-SAC on November 29, 201 - the day of the incident. ECF No. 68-7 at 1-4. In his declaration, Thompson states that he was on vacation on that date. *Id.* at 1, ¶ 2. Thompson's attached timesheet has the notation "A-V" for November 19, 2013 (*id.* at 4) and he notes that this is a reference to an "absence using vacation

leave." *Id.* at 2, ¶ 3. Plaintiff has failed to rebut this evidence in his reply and, accordingly, the court concludes that Thompson[1] is entitled to summary judgment. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (concluding that officers not present at the time force was used could not be held liable under § 1983 for failing to intercede).

### B. Use of Force by Defendants Bauer and Rodriguez

Plaintiff's deposition testimony reflects that, on November 29, 2013, he damaged his cell by breaking a sprinkler head and a glass window after being denied a shower by prison officials. ECF No. 68-12 at 6. After damaging his cell, he refused defendant Bauer's orders to submit to handcuffs. *Id.* Prison officials used pepper spray in an attempt to gain plaintiff's compliance, but he continued to disobey their orders. *Id.* Eventually, plaintiff agreed to leave his cell and be handcuffed. *Id.* Here, the accounts diverge. Defendants argue that they used only reasonable force to place plaintiff on the ground and apply restraints. ECF No. 68-2 at 7. By contrast, plaintiff alleges –in his complaint and initial and amended oppositions – that Bauer, with the assistance of Rodriguez, subjected him to excessive force by slamming his head against the concrete floor repeatedly after he had already been subdued. ECF No. 1 at 3-4; ECF No. 73 at 2-3.

Defendants contend that plaintiff's excessive force allegations are contradicted by the medical evidence. They note that, while plaintiff suffered cuts to his head and knees from the broken glass (ECF No. 68-4 at 3-4; ECF No. 68-12 at 13-15), nothing in his medical records is consistent with his claim that his head was slammed against concrete multiple times. Defendants have provided the declaration of Dr. Bennett Feinberg, a physician employed by California Correctional Health Care Services, who attests that he has familiarity with "the diagnosis and treatment of pain and injury from trauma." ECF No. 68-9 at 1-2 ¶¶1-3. Dr. Feinberg states that he has reviewed: (1) plaintiff's unit health records; (2) the complaint; (3) plaintiff's deposition testimony; and (4) a video interview with plaintiff that took place shortly after the November 29, 2013 incident. *Id.* at 2 ¶5. He notes that plaintiff's medical records do not show that he was

---

[1] The records indicate that a different officer with the same surname – A. Thompson – *was* present on that day. *See* ECF No. 73-2. Officer A. Thompson is not a defendant to this suit.

6

treated for or complained of dizziness, confusion, or nausea – all of which are symptoms that typically accompany serious head trauma. *Id.* at 3 ¶ 6, 7. Instead, he was treated only for a laceration on the left side of his forehead and cuts on his knees. *Id.* at 3 ¶ 7, 9.

Medical records reveal that plaintiff complained of a swollen leg in December of 2013 and that he received medical treatments for those complaints through that month and into the new year. *Id.* at 3-4 ¶¶8-13, 12-26. Dr. Feinberg points to a video interview which occurred after the incident on November 29, 2013 in which plaintiff is alert, capable of answering questions, and unmarked by facial swelling, bruising, or visible cuts. *Id.* at 5 ¶16. The only indication of injury is a bandage on the left side of his head which, in the video, plaintiff states resulted from broken window glass. *Id.* This video interview was lodged in the record and Dr. Feinberg's statements match the video evidence. ECF No. 70-71. Dr. Feinberg ultimately states that it is his medical opinion that plaintiff's claims as to the force used are contradicted by the medical records, his own testimony regarding his injuries, and the video evidence. ECF No. 68-9 at 5¶17.

The Supreme Court has held that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (affirming that a court weighing a summary judgment motion must "assume the truth of the evidence set forth by the nonmoving party"). The evidence offered by defendants regarding the extent of plaintiff's injuries is persuasive, but the extent of a plaintiff's injuries is only one factor to be weighed in the excessive force analysis. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). And the court cannot say that, as a matter of law, plaintiff's version of events is so implausible that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Notably, the injuries confirmed by record evidence – a cut on the left side of his forehead and cuts to his knees - are consistent with the allegations in plaintiff's complaint of force sufficient to produce those injuries. ECF No.1 at 4 (claiming that, as a consequence of the use of excessive force, glass went into the left part of plaintiff's forehead and left kneecap). The court also notes that plaintiff explains his failure to mention the excessive force incident in his video interview by alleging that: (1) Bauer had threatened him on the way to medical after the incident, telling him that he would regret saying anything; and (2) he was in shock at the time of the interview. ECF No. 73-1 at 4 ¶ 26; ECF No. 78 at 5 ¶ 23. These explanations are not plainly contradicted by the record and, as noted above, the court does not weigh credibility on summary judgment. While defendants' counsel will be free to cross-examine on the matter, the question of whom to believe is not appropriate for resolution on summary judgment.

### C. Failure to Exhaust Administrative Remedies

Next, defendants argue that plaintiff did not exhaust his administrative remedies against Defendant Lanigan prior to filing this suit. It is undisputed that only one grievance relevant to the excessive force incident was filed and exhausted. ECF No. 68 at 6 ¶¶ 28-29. That grievance mentioned only defendants Bauer, Rodriguez, and Thompson; it did not mention defendant Lanigan. ECF No. 68-8 at 6. In failing to name Lanigan in his grievance, plaintiff ran afoul of Cal. Code Regs. tit. 15 § 3084.2(a) which requires inmates to identify the staff member(s) involved in an issue and describe their involvement.

The Ninth Circuit has held that "a grievance suffices if it alerts the prison to the nature of the wrong for which the redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Inmates must still comply with the prison's deadlines and other procedural rules governing the submission of administrative grievances, however. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Compliance with a prison's procedural rules is excused, however, where "prison officials opt not to enforce a procedural rule

/////

but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016).

Defendants acknowledge that the grievance in this case was decided on its merits, but state that, unlike in *Reyes*, there was nothing in the grievance which put prison officials on notice as to plaintiff's claim against the unnamed defendant. In *Reyes*, the inmate submitted a grievance which identified Pain Management Committee, but failed to identify two members of that committee by name. *Id.* at 658-59. The Ninth Circuit held that the failure to identify the other two members did not preclude exhaustion because, in resolving the prisoner's grievance, prison officials discussed the actions of the committee and were thus aware of the claims against its unnamed members. *Id.* at 659. The court agrees that the present circumstances are distinguishable from *Reyes*. Unlike in *Reyes*, plaintiff made no references from which defendant Lanigan's involvement could be readily inferred. Instead, he simply stated that "[t]he officers involved were c/o Bauer, c/o Thompson, and c/o Rodriguez." ECF No. 68-8 at 6. Defendants have submitted a declaration from the Chief of the Office of Appeals stating that prison officials did not investigate or address any actions by individuals who had not been explicitly named in plaintiff's grievance. ECF No. 68-11 at 3 ¶ 7. And review of the grievance responses provides no indication that Lanigan's involvement or conduct was considered at any point in the investigation. *See* ECF No. 68-8 at 8-11; ECF No. 68-11 at 5-6.

For his part, plaintiff points to section "D" of his grievance which states that "I substained (sic) injuries that have become permanate (sic) and my rights have been violated. I would like to be compensated for both to insure the officers learn from the mistakes they made, the power they abused. Lastly to ensure this happens to no other inmates." ECF No. 68-8 at 5. He states that his reference to "officers" in the second sentence was intended to refer to all officers involved, including Lanigan. ECF No. 78 at 6 ¶ 30. The only natural reading of this section of the grievance, however, demands that officers refer back to the officers whom plaintiff identified as being involved in the incident – Bauer, Thompson, and Rodriguez. ECF No. 68-8 at 6. The court is unable to identify anything in the grievance which would have served to put officials on notice that plaintiff's reference to "officers" in section "D" included defendant Lanigan. Plaintiff also

9

claims that he told "Srgt. Newsom" that Lanigan was involved, but that Newsom failed to record and investigate that claim. ECF No. 78 at 6 ¶ 30. This conclusory and unsupported allegation is insufficient to excuse plaintiff's failure to comply with prison procedural rules. Plaintiff has not identified any valid excuse for failing to include defendant Lanigan's name among the officers involved in the alleged incident.

Based on the foregoing, the court finds that defendant Lanigan should be dismissed due to plaintiff's failure to exhaust administrative remedies against him.[2]

### D. Qualified Immunity[3]

Defendants argue that they are entitled to qualified immunity because: (1) no defendant violated plaintiff's constitutional rights; and (2) "[a]s of November 29, 2013, it was not clearly established that forcing an insubordinate inmate to the ground and securing him in response to safety concerns amounts to a constitutional violation." ECF No. 68-2 at 12-13.

#### 1. <u>Legal Standards</u>

Qualified immunity protects government officials from liability for civil damages where a reasonable official would not have known that his conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). In resolving questions of qualified immunity, "courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right." *Id.* (citation and bracketing omitted). "The second prong . . . asks whether the right in question was clearly established at the time of the violation." *Id.* at 1866 (citation omitted).

A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Clearly established law should not be defined "at a high level of generality"; rather,

---

[2] In light of this finding, the court will not address defendants' fourth argument that Lanigan had no realistic opportunity to intervene in any use of excessive force.

[3] Having already found defendants Thompson and Lanigan entitled to summary judgment on other grounds, the court will address defendants' qualified immunity argument only with respect to Bauer and Rodriguez.

10

it "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted). While this standard does not require "a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741(2011), courts typically should identify analogous cases, i.e., ones in which prison officials "acting under similar circumstances" violated the Eighth Amendment, *White*, 137 S. Ct. at 552. To be analogous, however, the case need not be "materially similar."

In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted). Absent binding precedent, courts should consider all relevant decisional law. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985). Unpublished circuit and district court decisions inform the analysis. *Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004); *Krug v. Lutz*, 329 F.3d 692, 699 (9th Cir. 2003).

**2.     Analysis**

The court finds that qualified immunity cannot be resolved as to either defendant Bauer nor Rodriguez on summary judgment. The court has already found that, viewing the facts in the light most favorable to plaintiff, defendants Bauer and Rodriguez violated his constitutional rights. Defendants argue that they responded to a dangerous situation and used only the force necessary to gain control of that situation. Their version of events is plainly at odds with plaintiff's claim that these defendants slammed his head into the ground after he had already been subdued, however. A jury will have to resolve that factual dispute, but if plaintiff's version is believed, the first prong is not met.

Defendants' statement that "[a]s of November 29, 2013, it was not clearly established that forcing an insubordinate inmate to the ground and securing him in response to safety concerns amounts to a constitutional violation," is undoubtedly correct. This case would have been disposed of long ago if that were all that plaintiff had accused them of doing. But it is not. Instead, the facts, viewed in a light most favorable to plaintiff, indicate that defendants continued to use force against him once he had already been subdued. It was well established in November of 2013 that such use of force violated the constitution. *See Hudson*, 503 U.S. at 6 ("[T]he core

11

judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). Ultimately, the factual disputes in this case make summary judgment based on qualified immunity inappropriate. *See Martinez v. Stanford*, 323 F.3d 1178, 1184-85 (9th Cir.2003) (finding that the "facts in dispute bearing on the question of qualified immunity" made summary judgment on that ground inappropriate).

**IV.     Conclusion**

Based on the foregoing, it is hereby RECOMMENDED that defendants' motion for summary judgment (ECF No. 68) be granted with respect to the claims against defendants M. Thompson and A. Lanigan and denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 1, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE